**CHAS. PFIZER & CO., Inc., Plaintiff,**

**v.**

**GENERIC FORMULAE, INC., and William Broder, Defendants.**

**No. 67 C 581.**

United States District Court
E. D. New York.

Aug. 3, 1967.

---

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for plaintiff.

Samuel E. Kezsbom, Brooklyn, N. Y., for defendants.

MEMORANDUM
(Incorporating Findings
of Fact) and ORDER

DOOLING, District Judge.

Defendant corporation makes a specialty of distributing by way of catalogue-and-mail-order sales under their "generic" names (i. e., chemical or technical as distinguished from proprietary names) pharmaceutical products that are in wide use. At a date preceding June 16, 1967, defendant, having satisfied itself that plaintiff's patent (No. 2,516,-080) on oxytetracycline would expire on July 18, 1967, arranged to procure a a stock of that bio-chemical, and then advertised that "Terramycin* is now available generically as Oxytetracycline Capsules." ("Terramycin" is plaintiff's name for its oxytetracycline.) An eight page mailing piece was prepared and sent out by defendant which on the front page displays centered on the top line, in the largest type used on the page (about 9/16 inch) and in red letters the word "Terramycin*." Then follows in more modest black type "now available generically as Oxytetracycline Capsules" and data about size and price. A red line is then printed and below it appears in modest black type "Oxytetracycline Intramuscular Solution," followed by size and price data.

Defendant states that it has not received any of the intramuscular oxytetracycline yet, and that it is negotiating for a product that will not infringe plaintiff's extant patent on an oxytetracycline intramuscular solution (No. 3,017,323).

As of July 7, 1967, defendant had taken orders for oxytetracycline capsules; it did not then have any oxytetracycline in stock; it had expected to receive injectables ordered from "Proter Laboratori," and it then expected capsules from Proter. Defendants' stated position is that as a general policy it will fill orders either for products ordered and identified by generic name—at low prices—or for products ordered by the proprietary names (such as "Terramycin") at the Red Book price and with

genuine product of the manufacturer of the proprietary-named product (Deposition in S.D.N.Y. 67 C 2566).

"Terramycin" is one of plaintiff's leading products. The word "Terramycin" is plaintiff's registered trademark (No. 577,504) used in sales of oxytetracycline products since 1950. Such sales in the last five years have amounted to about $100,000,000. Plaintiff also makes and sells a number of other antibiotics, and it employs about 1,000 "detail men" who call on medical doctors to interest them in plaintiff's products. Plaintiff is presently inaugurating a promotional campaign for its oxytetracycline intramuscular solution.

Plaintiff's oxytetracycline in human dosage form has been sold to the public only on prescription of licensed medical practitioners, and, as a result, plaintiff promotes sales in human dosage form only to the medical profession. A systematic monitoring of medical and pharmacological literature by plaintiff satisfies plaintiff that "oxytetracycline" is used far more often to identify the product than is "Terramycin" both in technical writing and in advertising of other manufacturers. Plaintiff has policed the uses of the word "Terramycin" by others and has immediately warned all unauthorized users of the word to discontinue the use, with the result that the word has been used substantially exclusively on plaintiff's oxytetracycline product.

■ Defendant's use of its advertising circular giving prominence to "Terramycin" in its offering for sale of its oxytetracycline product is intrinsically likely to divert sales from plaintiff to defendant and to confuse purchasers about the source of defendant's product. Such activities threaten plaintiff with damage to its business in oxytetracycline and damage to its trade name Terramycin which cannot be undone and cannot be adequately compensated in money damages.

It is not denied that the individual defendant is responsible for the corporate defendant's policies and that he is the corporate defendant's president, has full knowledge of the matters involved, and has participated in defendant's acts.

The jurisdiction of this Court is invoked under the patent laws and it is possible that defendants' sales or offers are in commerce (Complt. par. 11, Answer par. 9) so that jurisdiction can also be invoked under the trademark statutes.

The validity of the oxytetracycline patent is not said to have been adjudicated but it is said that it has been acquiesced in and has not been used by any one without plaintiff's authorization. Since, however, it has now expired, it does not support the case for a preliminary injunction. Material is presented to support the intramuscular solution patent, but it is insufficient to warrant any findings about validity at this stage of the case, and, moreover, the threat of infringement by defendant's still unacquired solution is not presently real enough to authorize injunctive relief even if a probability of ultimate success on validity could be demonstrated.

■ Defendant argues that the trade-mark "Terramycin" names the article of the now-expired patent, and that the monopoly in the name expired with the patent. See DuPont Cellophane Co. v. Waxed Products Co., 2d Cir. 1936, 85 F.2d 75. But the principle is not that wide or absolute. The name, even if embarrassed by its complete coincidence with all lawful sales of the patented product, may still identify a specific source to a significant class of users and be entitled to protection to that extent at least. Bayer Co. v. United Drug Co., S.D.N.Y.1921, 272 F. 505, 510. And see *Dupont*, 85 F.2d at 82. Plaintiff credibly avers that to the informed persons toward whom it directs its sales effort the bio-chemical name is a familiar identification of the product, and the trade name is invariably in association with plaintiff's product.

Accordingly, it is

Ordered that the defendants, their officers, agents, servants, employees, and

attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise be and they hereby are enjoined until the final hearing herein from using the word "Terramycin," or any word confusingly similar to it, in connection with the sale or offering for sale of oxytetracycline products in the United States.